UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF | BANKRUPTCY NO. |
| JOHN D. COUSINS<br>ALLISON J. COUSINS | 18-10739 |
| | SECTION "A" |
| DEBTOR(S) | CHAPTER 13 |

**REASONS FOR DECISION**

On August 21, 2018, John and Allison Cousins' ("Debtors") Objection to Claim No. 8 of the Internal Revenue Service ("Objection") came before the Court. After hearing, the Court took this matter under advisement.

**I. Background:**

On March 26, 2018, Debtors filed a Petition for Relief under Chapter 13 of Title 11 of the United States Code.[1] On April 27, 2018 the Internal Revenue Service ("IRS") filed a proof of claim ("Claim") that was subsequently amended on June 7, 2018 and June 13, 2018.[2] The final Claim asserted tax liabilities totaling $22,891.44, which consisted of a $8,675.87 unsecured priority claim and a $14,215.57 general unsecured claim.[3]

On June 28, 2018, Debtors objected to the Claim ("Objection")[4] taking issue with the priority classification of $2,085, for the shared responsibility payment ("SRP").[5] Under the federal Affordable Care Act ("ACA"), taxpayers may pay the SRP as an alternative to retaining minimal essential health insurance coverage.

---

[1] P-1.
[2] PoC # 8.
[3] PoC #8-3 at 4.
[4] P-56.
[5] It is also referred to as a Shared Responsibility Payment liability.

Debtors argue that the SRP is not a priority claim because the Internal Revenue Code ("IRC") labels it a "penalty." The IRS responds that the SRP's label does not resolve whether it is considered a "tax" or a "penalty" under the Bankruptcy Code.

## II. Law and Analysis:

The IRS seeks priority status, thus, it has the burden of proving the SRP falls within § 507(a) defining priority claims.[6] The IRS has adequately characterized the SRP as a tax, not a penalty, making the SRP a priority claim under the Bankruptcy Code.

The Bankruptcy Code allows for the discharge of all debts with the exception of those listed as priority clams in § 507(a).[7] Specifically, section 507(a)(8)(A)(iii) prevents a debtor from discharging a priority tax[8] while sections 523(a)(7)[9] and 1328(a) allow for the discharge of a penalty. The distinction between tax and penalty is not as clear as one might imagine.

Courts define "tax" as "a pecuniary burden laid upon individuals or property for the purpose

---

[6] *Grogan v. Garner*, 498 U.S. 279, 282 (1991) (explaining that creditors opposing the dischargeability of a debt must carry the burden of proof that their claims fall within a statutory exception).
[7] 11 U.S.C. § 1328(a).
[8] 11 U.S.C. § 507(a)(8)(A)(iii) states:
> (a) The following expenses and claims have priority in the following order: . . . (8) Eighth, allows unsecured claims of governmental units, only to the extent that such claims are for–(A) a tax on or measured by income or gross receipts for a taxable year ending on or before the date of the filing of the petition–. . . (iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after the commencement of the case;

[9] 11 U.S.C. § 523(a)(7) states:
> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt– . . . (7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty–(A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or (B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition.

of supporting the government."[10] In *United States v. New York*,[11] the Supreme Court expanded the definition concluding that a tax must be an "effort by the United States to obtain . . . revenue."[12] In contrast, a "penalty" is an "exaction imposed by statute as a punishment for an unlawful act" or omission.[13] Nevertheless, "an exaction having in part a deterrent effect does not make the exaction a penalty."[14]

### A. The Shared Responsibility Payment is a Tax

SRP liability arises under § 5000A of the IRC, which was enacted as a part of the ACA.[15] Section 5000A(a) requires individual taxpayers to maintain minimum essential health insurance coverage, unless they qualify for an exemption.[16] However, subsection (b) offers a taxpayer as an alternative, the right to make a SRP to the government when he files his tax return without incurring any other consequences. Subsection (b) states:

> (b) Shared responsibility payment.–
> (1) In general.–If a taxpayer who is an applicable individual, or an applicable individual for whom the taxpayer is liable under paragraph (3), fails to meet the requirement of subsection (a) for 1 or more months, then, except as provided in subsection (e), there is hereby imposed on the taxpayer a penalty with respect to such failures in the amount determined under subsection (c).
> (2) Inclusion with return.–Any penalty imposed by this section with respect to any month shall be included with taxpayer's return under chapter 1 for the taxable year which includes such month.
> (3) Payment of penalty.–If an individual with respect to whom a penalty is

---

[10] *New Jersey v. Anderson*, 203 U.S. 483, 492 (1906); *United States v. New York*, 315 U.S. 510, 515 (1942); *New York v. Feiring*, 313 U.S. 283, 285 (1941) (defining a tax as a "pecuniary burden[] . . . upon individuals or their property, regardless of their consent, for the purpose of defraying the expenses of the government or of undertakings authorized by it").
[11] 315 U.S. 510 (1942).
[12] *Id.* at 517; *see also In re Bradford*, 534 B.R. 839, 851 (Bankr. M.D. Ga. 2015) (evaluating the Court's decision in *United States v. New York*, 315 U.S. 510 (1942)).
[13] *United States v. La Franca*, 282 U.S. 568, 572 (1931) (emphasis supplied); *United States v. Reorganized CF & I Fabricators of Utah, Inc.*, 518 U.S. 213, 224 (1996).
[14] *In re Hardee*, 137 F.3d 337, 341 (5th Cir. 1998).
[15] 26 U.S.C. § 5000A.
[16] *Id.*

> imposed by this section for any month–
> (A) is a dependent (as defined in section 152) of another taxpayer for the other taxpayer's taxable year including such month, such other taxpayer shall be liable for such penalty, or
> (B) files a joint return for the taxable year including such month, such individual and the spouse of such individual shall be jointly liable for such penalty.[17]

The individual mandate was enacted to solve a problem:

> Because state and federal laws nonetheless require hospitals provide a certain degree of care to individuals without regard to their ability to pay, *see*, *e.g.,* 42 U.S.C. § 1395; Fla. Stat. § 395.1041(2010), hospitals end up receiving compensation for only a portion of the services they provide. To recoup the losses, hospitals pass on the cost to insurers through higher rates, and insurers, in turn, pass on the cost to policy holders in the form of higher premiums.[18]

Thus, a "central aim of the ACA"[is to]—"reduce the number of uninsured U.S. residents . . . by giving potential recipients of health care a financial incentive to acquire insurance."[19] Congress recognized that most of the uninsured were not so by choice, so it devised a three-part solution: (1) "'a guaranteed issue' requirement, which bars insurers from denying coverage . . . on account of [a] person's medical condition or history;" (2) a requirement that insurers use a "'community rating' to price their insurance policies," which "bars insurance companies from charging higher premiums to those with preexisting conditions;" and (3) the minimum coverage provision because the first two provisions "Congress comprehended, could not work effectively unless individuals were given a powerful incentive to obtain insurance."[20] At a House of Representatives House Ways and Means Committee Meeting Uwe Reinhardt stated:

---

[17] 26 U.S.C. § 5000A(b).
[18] *National Federation of Indep. Business v. Sebelius*, 567 U.S. 519, 547 (2012) (Majority Opinion).
[19] *Id*. at 595 (2012) (citing 42 U.S,C. § 18091(2)(C) and (I)(2005 ed., Supp. IV) (Ginsburg, J., concurring).
[20] *Id*. at 597.

> [I]mposition of community-rated premiums and guaranteed issue on a market of competing private health insurers will inexorably drive that market into extinction, unless these two features are coupled with . . . a mandate on individual[s] to be insured.[21]

The SRP was enacted to provide this incentive.

The IRC refers to the SRP as a penalty, but the Supreme Court has repeatedly held that whether the IRC labels a liability a "tax" or a "penalty" does not control.[22] Rather the assessment's function is the determining factor in deciding its character as a penalty or tax.[23] "The Supreme Court, [] has focused the tax-penalty inquiry under § 507(a)(8) on function [] rather than purpose."[24]

The functional analysis requires courts look at the assessment's purpose reflected through its operation rather than its label.[25] Although not squarely on point as to all the issues presented, the Supreme Court's decision in *National Federation of Independent Business v. Sebelius*, guides and forecloses some of this Court's analysis.[26]

In *Sebelius*, the Court found that the assessment under § 5000A (or SRP) constituted a tax and therefore was within Congress' constitutional powers to create. In reaching its conclusion, the Court applied the same functional-analysis test used to determine the nature of an assessment under § 507(a) of the Bankruptcy Code.

---

[21] *Id*. (quoting Hearings before the House Ways and Means Committee, 111th Cong., 1st Sess., 10, 13 (2009)) (emphasis in original).
[22] *CF & I*, 518 U.S. at 220–21; *United States v. Sotelo*, 436 U.S. 268, 275 (1978) ("That the funds due are referred to as a 'penalty' . . . does not alter their essential character as taxes."); *New York*, 315 U.S. at 515–16.
[23] *Id*.; *Hardee*, 137 F.3d at 341; *United States v. Unsecured Creditors' Comm.*, 977 F.2d 137, 139 (4th Cir. 1992) (citing *Anderson*, 203 U.S. at 483) (explaining that "it is the purpose of the tax, not its name, which controls. While the name given by the legislative body may well be indicative of purposes . . . it is not conclusive.").
[24] *In re Huenerberg*, 590 B.R. 862, 869 (Bankr. E.D. Wis. 2018); *CF & I*, 518 U.S. at 224.
[25] *Id*.; *New York*, 315 U.S. at 515–16 (explaining that a tax "includes any 'pecuniary burden laid upon individuals or property for the purpose of supporting the government,' by whatever name it may be called).
[26] 567 U.S. 519 (2012). True, a determination for constitutional purposes may differ from one based on § 507(a) of the Bankruptcy Code, but here since the Court applied the same test, the Court's analysis controls.

In *Sebelius*, the Court reasoned that the SRP appeared to be a tax because:

> [The SRP] looks like a tax in many respects. [It] . . . is paid into the Treasury by "taxpayer[s]" when they file their tax returns. 26 U.S.C. § 5000A(b). It does not apply to individuals who do not pay federal income taxes because their household income is less than the filing threshold in the Internal Revenue Code. § 5000A(e)(2). For taxpayers who do owe the payment, its amount is determined by such familiar factors as taxable income, number of dependents, and joint filing status. §§ 5000A(b)(3), (c)(2), (c)(4). The requirement to pay is found in the Internal Revenue Code and enforced by the IRS, which—as we previously explained—must assess and collect it 'in the same manner as taxes.' . . . This process yields the essential feature of any tax: It produces at least some revenue for the Government.[27]

Having found the SRP's assessment to be similar to all taxes, the Court turned its attention to the defining characteristics of penalties. In *Drexel Furniture*,[28] the Supreme Court had previously enumerated three (3) characteristics distinguishing penalties from taxes. According to *Drexel Furniture,* penalties: (1) "impose an exceedingly heavy burden" for lack of compliance; (2) contain a scienter requirement typical of punitive statutes; and (3) are enforced by an agency other than the IRS.[29] Examining the SRP under the *Drexel Furniture* analysis, the Court stated:

> ...[F]or most Americans the amount due will be far less than the price of insurance, and, by statute, it can never be more . . . . Second, the individual mandate contains no scienter requirement. Third, the payment is collected solely by the IRS through the normal means of taxation–except that the Service is *not* allowed to use those means most suggestive of a punitive sanction, such as criminal prosecution.[30]

The conclusion that the SRP did not function like a penalty also pertained to allegations that it was regulatory or coercive. The *Sebelius* Court explained:

> Indeed, '[e]very tax is in some measure regulatory. To some extent it interposes an economic impediment to the activity taxed as compared with others not taxed.' [] That § 5000A seeks to shape decisions about whether to buy health insurance does not mean that it cannot be a valid exercise of the taxing power. . . . While the

---

[27] *Sebelius*, 567 U.S. at 563–64.
[28] *Bailey v. Drexel Furniture Co.*, 259 U.S. 20 (1922).
[29] *Sebelius*, 567 U.S. at 565–66.
[30] *Id.* (emphasis in orginal).

6

individual mandate clearly aims to induce the purchase of health insurance, it need not be read to declare that failing to do so is unlawful. Neither the Act nor any other law attaches negative legal consequences to not buying health insurance, beyond requiring payment to the IRS. . . . if someone chooses to pay rather than obtain health insurance, they have fully complied with the law. Indeed, it is estimated that four million people each year will choose to pay the IRS rather than buy insurance. We would expect Congress to be troubled by that prospect if such conduct were unlawful.[31]

Finally, the Court recognized that the SRP was expected to raise over four (4) billion dollars in revenue per year, offsetting some of the costs of the ACA.[32]

As previously noted, the *Sebelius* Court's analysis regarding the nature of the SRP cannot be distinguished from an analysis under § 507(a) of the Bankruptcy Code. While Sebilus was primarily concerned with the Constitutionality of the SRP, the Court's citation to bankruptcy authority in making its determination forecloses any argument that the different contexts of *Sebelius* and this matter should result in different outcomes.

This conclusion results because *Sebelius* cites to two (2) bankruptcy decisions as support for its approach: *United States v. Sotelo,* 436 U.S. 268 (1978)[33] and *United States v. Reorganized CF & I Fabricators of Utah, Inc.*, 518 U.S. 213 (1995). In *Sotelo*, the Supreme Court considered IRC § 6672 which assessed a "penalty" for failure to pay trust funds to the government.[34] Applying the functional analysis test, the *Sotelo* Court held the assessment was not a penalty but a tax under the Bankruptcy Code.[35] The Court explained that although the statute referred to the liability as a "penalty" it "d[id] not alter their essential character as taxes," because the "liability is predicated on

---

[31] *Id*. at 567–68.
[32] Other sources indicate that the amount collected could be as high as 15 billion per year. *See*, *e.g.,* 155 Cong. Rec. S13824 (daily ed. Dec. 23, 2009) (statement of Sen. Hatch).
[33] *Sebelius*, 567 U.S. at 565–67.
[34] *Sotelo*, 436 U.S. at 272–73.
[35] *Id.* at 275.

a failure to pay over, rather than a failure initially to collect, the taxes."[36]

In *CF & I* the Supreme Court applied the functional analysis test when considering the "taxes" imposed under IRC § 4971(a) against employers who fail to adequately fund pension plans. Finding that the 'tax' was actually a penalty for bankruptcy purposes,[37] the *CF & I* Court employed a two-step approach: (1) whether the exaction meets the general definition of a tax, and (2) whether the exaction possesses other characteristics of a tax.[38] The Court held that IRC § 4971 exaction had a "patently punitive function," thus, it was a penalty and not a tax.[39]

*CF & I* provides that the distinction between lawful and unlawful conduct is an important, if not determinative, factor when concluding whether an assessment is a penalty or a tax.[40] Nevertheless, some courts hold that the lawful-unlawful distinction is "best viewed as a nonexclusive factor . . . in deciding whether an exaction has the purpose of supporting the government."[41] For instance, the bankruptcy court in *In re Bradford* did not apply the lawful-unlawful distinction made in *CF & I* as a "blanket rule, exclusive of any other test."[42] Rather, it followed the reasoning of the court in *In re Cespedes*, stating:

> Because the exaction in question in *CF & I* was related to an unlawful omission, it was not necessary for the Court to consider whether a penalty could also apply to an act or omission that was lawful, but discouraged.[43]

Furthermore, both courts found it persuasive that *CF & I* did not stop the inquiry once the

---

[36] *Id*.
[37] *CF & I*, 518 U.S. at 224.
[38] *Id.* at 220.
[39] *Id.* at 226.
[40] *Id.* at 224–26; *see also United States v. Juvenile Shoe Corp. Of America (In re Juvenile Shoe Corp. Of America)*, 99 F.3d 898, 902 (8th Cir. 1996) (Where the Eighth Circuit employed *CF & I's analysis* when it examined the nature of § 4980 of the Tax Code. The determinative factor in the *Juvenile* Court's decision was that a penalty, "require[s] [] that the exaction be imposed 'as a punishment for an unlawful act.'").
[41] *Bradford*, 534 B.R. at 849.
[42] *Id.* at 848.
[43] *Id.* at 849 (quoting *In re Cespedes*, 393 B.R. 403, 408 (Bankr. E.D.N.C. 2008)).

conduct was determined to be unlawful.[44] Rather, how the assessment fits into the scheme of the Tax Code and the provision's legislative history were important.[45] Accordingly, the lawful-unlawful distinction constitutes a very important factor when applying a functional analysis to determine the assessment's character, but it is not the only factor.

Refusing to purchase health insurance and instead pay an assessment does not constitute an "unlawful act." This is a strong indication that the SRP does not constitute a penalty.[46] Additionally, the legislative history implies that the SRP is a tax because Congress refers multiple times to how it raises revenue:[47]

> "There are two clear winners. . . . The first winner is the Federal Government, which could easily use this authority to increase the penalty—or impose similar ones—to create new streams of revenue to fund more out-of-control spending." 155 Cong. Rec. S13822 (daily ed. Dec. 23, 2009) (statement of Sen. Hatch ).

> "[D]oubling of the unconstitutional mandate tax from $8 billion to $15 billion." 155 Cong. Rec. S13824 (daily ed. Dec. 23, 2009) (statement of Sen. Hatch).

Moreover, "a tax that serves a revenue-raising purpose is not invalid simply because it also serves a regulatory power."[48]

As pointed out in *Sebelius*, the SRP is assessed on a person's filing status and income rather than exclusively on the person's conduct.[49] To owe the tax a person must first be a taxpayer, obligated to file a return.[50] Then the SRP is calculated on the taxpayer's income and filing status

---

[44] *Id.*
[45] *Id.* (citing *CF & I*, 518 U.S. at 225–26).
[46] *See CF & I*, 518 U.S. at 225–26.
[47] "[T]he tax on uninsured income earners would serve a valid revenue-raising purpose—namely, to defray the costs of subsidizing health insurance for those who could not otherwise afford it." 155 Cong. Rec. S13843 (daily ed. Dec. 23, 2009)
[48] 155 Cong. Record S13843 (daily ed. Dec. 23, 2009).
[49] *Sebelius*, 567 U.S. at 563.
[50] *See id.*

as well as the number of dependents claimed.[51] Thus failing to acquire insurance, does not automatically impose a SRP obligation on an individual.

The Eastern District of Louisiana ("District Court") recently held the SRP to be a tax.[52] The District Court stated that for bankruptcy purposes: "The payment functions more like a tax and the process has the same essential features of any tax for constitutional purposes."[53] The factors the District Court used to make that conclusion are: (1) the charge in and of itself is not a punishment because health insurance likely would have cost more than the assessment; (2) although Congress used the word penalty to refer to the SRP, when the Court looks beyond the labels, the SRP lacks the characteristics of a penalty; (3) The SRP does not punish an individual for unlawful activity, no negative consequences are imposed on someone who fails to purchase healthcare insurance or fails to pay the SRP;[54] (4) this Circuit has declared that "an exaction having in part a deterrent effect does not make that exaction a penalty;"[55] and (5) the IRS collects the SRP, like any other means of taxation.[56]

In reversing the bankruptcy court's ruling, the District Court found the ruling expanded the scope of penalty too far, including fees that deter lawful conduct.[57] Similarly, the bankruptcy court in *In re Huenerberg,* recognized:

> [E]xpanding the scope of "penalty" to include conduct-deterring exactions risks turning all (or practically all) taxes into penalties. *See Nat'l Fed'n*, 567 U.S. at 567, 132 S. Ct. 2566 (noting that "[e]very tax is in some measure regulatory" because "it interposes an economic

---

[51] *Id.*
[52] *United States v. Chesteen*, No. 18-2077, 2019 U.S. Dist. LEXIS 29346 (E.D. La. Feb. 22, 2019).
[53] *Id.*
[54] Under the ACA, "failure by a taxpayer to timely pay any penalty imposed by this section, such taxpayer shall not be subject to any criminal prosecution or penalty with respect to such failure." 26 U.S.C. § 5000A(g)(2)(A).
[55] *Hardee*, 137 F.3d at 341.
[56] *Sebelius*, 567 U.S. at 566.
[57] *Chesteen*, 2019 U.S. Dist. LEXIS 29346, at *6–7.

impediment to the activity taxed as compared with others not taxed").[58]

Thus, the SRP must be considered a tax for purposes of § 507(a) of the Bankruptcy Code.

### B. Priority Status

The next inquiry for the Court is whether or not the SRP is entitled to priority status. Section 507(a)(8)(E)(I) Code states:

> (a) The following expenses and claims have priority in the following order . . . (8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for–. . .

Section 507(a)(8) grants priority to certain income or excise taxes:

> (8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for—
>> (A) a tax on or measured by income or gross receipts for a taxable year ending on or before the date of the filing of the petition—
>>> (i) for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;
>>> (ii) assessed within 240 days before the date of the filing of the petition, exclusive of—
>>>> (I) any time during which an offer in compromise with respect to that tax was pending or in effect during that 240-day period, plus 30 days; and
>>>> (II) any time during which a stay of proceedings against collections was in effect in a prior case under this title during the 240-day period, plus 90 days; or
>>> (iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case;
>> (E) an excise tax on–(i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition . . .[59]

Only those taxes that fall within the scope of § 507 are entitled to priority status. The United

---

[58] *Heunerberg*, 590 B.R. at 868.

[59] 11 U.S.C. § 507(a)(8)(A) and(E)(i). None of the limiting exclusions of § 507(a)(8)(A) are applicable under the facts of this case.

States Constitution allows the imposition of four (4) types of taxes: duties, excises,[60] direct taxes[61] and income taxes.[62] The power to tax a duty confers on the national government the exclusive power to tax imports into the United States.[63] The SRP is not a duty or impost tax because health care has no relation to an importation of goods.

    Furthermore, the SRP is not a direct tax. A "Direct Tax" is:

> A tax that is imposed on property, as distinguished from a tax on a right or privilege. A direct tax is presumed to be borne by the person upon whom it is assessed, and not "passed on" to some other person. Ad valorem and property taxes are direct tax.[64]

A "Capitation Tax" or "Poll Tax" is: "A fixed tax levied on each person within a jurisdiction,"[65] of "a tax that everyone must pay simply for existing."[66] In *Sebelius*, the Supreme Court explained that the SRP does not:

> ... [F]all within any recognized category of direct tax. It is not a capitation. ... The whole point of the [SRP] is that it is triggered by specific circumstances—earning a certain amount of income but not obtaining health insurance. The payment is also plainly not a tax on the ownership of land or personal property. ... thus [the SRP] is not a direct tax that must be apportioned among several States.[67]

Thus, the SRP must be either a excise tax or an income tax. The SRP is found in a section of the IRC titled "Miscellaneous Excise Taxes." While its location in the Internal Revenue Code and title

---

[60] Article I, Section 8, Clause 1 of the U.S. Constitution states:
    Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay Debts and provide for the common Defence and general Welfare of the United States; but all Duties, Imposts and Excises shall be uniform throughout the United States.
[61] Article I, Section 9, Clause 4 of the U.S. Constitution states:
    No Capitation, or other direct, Tax shall be laid, unless in Proportion to the Census or Enumeration herein before directed to be taken.
[62] The Sixteenth Amendment to the U.S. Constitution states:
    The Congress shall have power to lay and collect taxes on income, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration.
[63] *Michelin Tire Corp. v. Wages*, 423 U.S. 276, 285 (1976).
[64] Black's Law Dictionary (10th ed. 2014).
[65] *Id.*
[66] *Sebelius*, 567 U.S. at 571.
[67] *Id.*

is not conclusive, it is persuasive.[68]

The Bankruptcy Code does not define the term "excise tax," but courts generally apply a broad definition.[69] "[A]n excise tax is imposed upon 'a discrete act by the person or entity being taxed,'"[70] and it "essentially encompass[es] any tax that is 'indirectly assessed.'"[71] It is one "'that is not directly imposed upon people or property' but is instead 'imposed upon a particular use of property' or upon the exercise of 'right or privilege.'"[72] Since the SRP is assessed when a taxpayer exercises his or her right to remain uninsured, it may be a tax imposed "upon the exercise of a right or privilege," making it an excise tax.

This is not the first time Congress has used a tax to encourage Americans to buy something. "Tax incentives already promote, for example, purchasing homes and professional educations."[73] Excise taxes have also been used to deter conduct even when it is Constitutionally guaranteed, such as the excise tax imposed on the sale of firearms.[74] Nevertheless, § 5000A is unique in that it taxes the right to do nothing rather than crediting or fining a taxpayer for taking certain actions.

Alternatively, the SRP might be an income tax which is defined as:

[A] tax upon earning, taking that term in its broadest sense, and irrespective of the question whether the person whose income is taxed has actively earned it or has merely profited by loaning his capital for active employment by another.[75]

---

[68] *See id.* at 564–65.
[69] *See, e.g., In re Rizzo*, 741 F.3d 703, 706 (6th Cir. 2014); *Boston Reg'l Med. Ctr., Inc. v. Mass. Div. Of Health Care Fin. & Policy*, 365 F.3d 51 (1st Cir. 2004); *In re Groetken*, 843 F.2d 1007, 1013 (7th Cir. 1988); *In re Suburban Motor Freight, Inc.*, 998 F.3d 338 (6th Cir. 1993).
[70] *Rizzo*, 741 F.3d at 706 (quoting *In re DeRoche*, 287 F.3d 751, 755 (9th Cir. 2012)).
[71] *Id.* (quoting *Suburban Motor Freight*, 998 F.3d at 340 n. 3).
[72] *Id.* (quoting *In re Nat'l Steel Corp.*, 321 B.R. 901, 909 (Bankr. N.D. Ill. 2005)).
[73] *Sebelius*, 565 U.S. at 572 (citing 26 U.S.C. §§ 163(h), 25A).
[74] 26 U.S.C. § 5801 et seq. imposes an occupational excise tax on the importation, manufacturing, and sale of firearms.
[75] Black's Law Dictionary (10th ed. 2014) (quoting Henry Campbell Black, *A Treatise on the Law of Income Taxation under Federal and State Laws* § 1, at 1 (1913)).

This argument gains weight since the SRP is based on an individual's income level.[76] Thus, if not an excise tax, the SRP could be an income tax.

Admittedly, the SRP does not fit neatly into either definition, but the Supreme Court's elimination of the SRP as either a duty, impost, or direct tax leaves only the remaining choices. Thus, by the process of elimination, the SRP is either an excise or an income tax, either of which affords it priority status.

### III. Conclusion:

To effectuate the purpose behind § 507–providing equal distribution to similarly situated creditors–the Court concludes that the primary function and purpose of IRC § 5000A's SRP is to support the government. Thus, it functions like a tax. Accordingly, the SRP is a nondischargeable "tax" entitled to priority status within the meaning of § 507(a)(8). Debtors' Objection to Claim of the IRS is DENIED.

An Order in accord with these Reasons will be entered separately.

New Orleans, Louisiana, April 10, 2019.

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge

---

[76] 26 U.S.C. § 5000A(c)(2)(A)(ii).